UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GERALD CEARLEY,

    Plaintiff,

v.

                              CASE NO.:

BLUESTEM BRANDS, INC. D/B/A FINGERHUT,

    Defendant.

_____/

## COMPLAINT

1. "Robocalls" are the #1 consumer complaint in America today.

2. In 2016, there were almost 4,000,000 complaints reported to the Federal Communications Commission (FCC) and the Federal Trade Commission (FTC) concerning robocalls—3,857,627 to be exact.[1] In 2015 and 2014, the robocall complaints reached 2,636,477 and 1,949,603, respectively.[2] It is important to recognize these merely reflect the number of individuals that complained to these agencies; the number of people that have been victimized by robocalling abuse could be close to 100,000,000 in the last 3 years.

---

[1] *National Do Not Call Registry Data Book FY 2016, October 1, 2015 – September 30, 2016*, FEDERAL TRADE COMMISSION (Dec. 2016), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2016/dnc_data_book_fy_2016_post.pdf; *Consumer Complaints Data – Unwanted Calls, FCC – Open Data*, FEDERAL COMMUNICATIONS COMMISSION, https://opendata.fcc.gov/Consumer-and-Government-Affairs/Consumer-Complaints-Data-Unwanted-Calls/vakf-fz8e.

[2] *National Do Not Call Registry Data Book FY 2015*, FEDERAL TRADE COMMISSION (Nov. 2015), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2015/dncdatabookfy2015.pdf; *Consumer Complaints Data – Unwanted Calls, FCC – Open Data*, FEDERAL COMMUNICATIONS COMMISSION, https://opendata.fcc.gov/Consumer-and-Government-Affairs/Consumer-Complaints-Data-Unwanted-Calls/vakf-fz8e; *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, FEDERAL COMMUNICATIONS COMMISSION, https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf; *National Do Not Call Registry Data Book FY 2014*, FEDERAL TRADE COMMISSION (Nov. 2014), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2014/dncdatabookfy2014.pdf.

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014). Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

4. Plaintiff, Gerald Cearley, alleges Defendant, Bluestem Brands, Inc. d/b/a Fingerhut, robocalled him more than 100 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA").

5. Robocalls are very inexpensive to make. As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

6. The TCPA was enacted to prevent companies like Defendant from invading American citizens' privacy and prevent illegal robocalls.

7. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of

protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; *see also Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

8. According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

## JURISDICTION AND VENUE

9. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

10. The alleged violations described in the Complaint while Plaintiff was in Pinellas County, Florida.

## FACTUAL ALLEGATIONS

11. Plaintiff is a natural person, and citizen of the State of Florida, residing in Pinellas County, Florida.

12. Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8).

13. Plaintiff is an "alleged debtor."

14. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

15. Defendant is a corporation with its principal place of business in Eden Prairie, Minnesota, and conducts business in the State of Florida.

16. Defendant is a "debt collector" as defined by Florida Statute § 559.55(7).

17. The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute § 559.55(6).

18. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (727) 557-4139.

19. Plaintiff was the "called party" during each phone call subject to this lawsuit.

20. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

21. On or about September 1, 2016, Plaintiff received a telephone call to his aforementioned cellular telephone number from Defendant seeking to recover a debt from the Plaintiff on his Sam's Club-branded credit card.

22. Immediately upon receipt of the calls, after September 1, 2016, Plaintiff answered a call from Defendant and explained that he felt harassed by all of the calls, and demanded that Defendant stop calling his aforementioned cellular telephone number.

23. In or about September of 2016, during the aforementioned phone conversation with Defendant's agent/representative, Plaintiff expressly revoked any express consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

24. Defendant attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

25. Defendant made at least one call to (727) 557-4139.

26. Defendant made at least one call to (727) 557-4139 using an "automatic telephone dialing system" (ATDS).

27. Defendant made at least ten (10) calls to (727) 557-4139.

28. Defendant made at least ten (10) calls to (727) 557-4139 using an ATDS.

29. Defendant made at least fifty (50) calls to (727) 557-4139.

30. Defendant made at least fifty (50) calls to (727) 557-4139 using an ATDS.

31. Defendant made at least one hundred (100) calls to (727) 557-4139.

32. Defendant made at least one hundred (100) calls to (727) 557-4139 using an ATDS.

33. Each call the Defendant made to (727) 557-4139 in the last four years was made using an ATDS.

34. Each call the Defendant made to the Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

35. Each call the Defendant made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

36. Furthermore, many of the calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

37. Defendant has stipulated in another lawsuit that the telephone system used to call the Plaintiff was in fact an ATDS.

38. Plaintiff repeatedly requested the Defendant to stop calling his cell phone, however, the Defendant continued to make calls

39. Plaintiff's conversations with the Defendant demanding an end to the harassment were ignored.

40. Defendant has recorded at least one conversation with the Plaintiff

41. Defendant has recorded numerous conversations with the Plaintiff.

42. Defendant has made approximately one hundred (100) calls to Plaintiff's aforementioned cellular telephone number from in or about September 2016 until today, which will be established exactly once Defendant turns over their dialer records.

43. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abusive robocalls.

44. Defendant has been sued in federal court where the allegations include: calling an individual using an ATDS after the individual asked for the calls to stop.

45. By effectuating these unlawful phone calls, Defendants have caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

46. Defendant's aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

47. Defendant's phone calls harmed Plaintiff by wasting his time.

48. Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used." In re: Rules Implementing the TCPA of 1991, 23 FCC Rcd 559, 562 (2007). Defendant's phone calls harmed Plaintiff by depleting the battery life on his cellular telephone, and by using minutes allocated to Plaintiff by his cellular telephone service provider.

49.     Defendant's corporate policy and procedures are structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have mistakenly believed it had.

50.     Defendant's, corporate policy and procedures provided no means for the Plaintiff to have his aforementioned cellular number removed from the call list.

51.     Defendant has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

52.     Bluestem Brands, Inc. d/b/a Fingerhut has numerous other federal lawsuits pending against them alleging similar violations as stated in this complaint.  The Defendant has been sued civilly in Federal Court 183 times since 2014 (Attached hereto as Exhibit "A").

53.     In the last 3 years, the Defendant has had 2,721 complaints reported to the Better Business Bureau (BBB), of which 463 of those complaints are classified as being related to "Billing/Collection Issues."[3]

54.     Plaintiff expressly revoked any consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant's placement of the calls.

55.     Defendant never had the Plaintiff's express consent for placement of telephone calls to his aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice.

---

[3] *Bluestem Brands, Inc. d/b/a Fingerhut, Reviews & Complaints*, BETTER BUSINESS BUREAU, https://www.bbb.org/minnesota/business-reviews/mail-order-and-catalog-shopping/bluestem-brands-inc-in-eden-prairie-mn-411/reviews-and-complaints.

56. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

57. Defendant violated the TCPA with respect to the Plaintiff.

58. Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

### COUNT I
**(Violation of the TCPA)**

59. Plaintiff incorporates Paragraphs one (1) through fifty-eight (58).

60. Defendant willfully violated the TCPA with respect to the Plaintiff each time they called the Plaintiff after he revoked his consent to being called by them using an ATDS or pre-recorded voice.

61. Defendant knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff revoked his consent to being called by them using an ATDS or pre-recorded voice.

62. Defendant, Bluestem Brands, Inc. d/b/a Fingerhut, repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

63. As a result of Defendant's illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

64. Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, Bluestem Brands, Inc. d/b/a Fingerhut, from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

### COUNT II
### (Violation of the FCCPA)

65. Plaintiff incorporates Paragraphs one (1) through fifty-eight (58).

66. At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

67. Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family.

68. Defendant has violated Florida Statute § 559.72(7) by willfully engaging in conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

69. Defendant has violated Florida Statute § 559.72(9) by attempting to enforce a debt when Defendant knows that the debt is not legitimate or assert the existence of some legal right when Defendant knows that right does not exist.

70. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder of future illegal conduct, and any other such relief the court may deem just and proper.

Respectfully submitted,

*s/Stefan A. Alvarez*

9

Stefan A. Alvarez, Esquire
Florida Bar No. 0100681
Stefan@TheConsumerProtectionFirm.com
William "Billy" Peerce Howard, Esquire
Florida Bar No. 0103330
Billy@TheConsumerProtectionFirm.com
THE CONSUMER PROTECTION FIRM, PLLC
210-A South MacDill Avenue
Tampa, FL 33609
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
*Attorneys for Plaintiff*